NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AISHA M. HILL<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | Civil Action No. 17-0386 (SDW)<br><br>**OPINION**<br><br>November 14, 2017 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Aisha M. Hill's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Leonard Olarsch's ("ALJ Olarsch") denial of her claim for disability insurance benefits, period of disability, and supplemental security income under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Olarsch's factual findings are supported by substantial credible evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on September 24, 2012. (Administrative Record 19) [hereinafter Tr.]. At the same time, Plaintiff also filed a Title XVI application for supplemental security income. (*Id.*) Plaintiff alleged disability beginning January 13, 2011, "due to major depression, pulmonary embolisms, and high blood pressure." (Tr. 19, 224, 255.) Both claims were denied on January 17, 2013, and again on reconsideration on September 10, 2013. (*Id.*) Plaintiff then filed a written request for hearing on November 11, 2013. (*Id.*) The Plaintiff appeared and testified at a hearing held on August 12, 2015, in Newark, New Jersey. (*Id.*) Rocco J. Meola appeared at the hearing as a vocational expert. (*Id.*) Subsequently, ALJ Olarsch concluded that Plaintiff was not disabled under §§ 216(i), 223(d), or 1614(a)(3)(A) of the Act from January 13, 2011 through the date of his decision on August 24, 2015. (Tr. 19, 28-29.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was thirty-five years old at the alleged onset date of her disability in 2011. (Tr. 226.) She attended public school through the eleventh grade, where she attended remedial classes. (Tr. 38.) Plaintiff obtained her GED from Essex County College. (*Id.*) She previously worked as a sales associate, nurse's aide, and teacher's aide. (Tr. 38, 324.) Plaintiff's last significant employment was as a nurse's aide at Clara Maass Hospital ("Clara Maass") in Belleville, New Jersey; she was still working at Clara Maass at the time of her hearing. (Tr. 40-42, 50.) As a nurse's aide, Plaintiff is responsible for prepping patients, helping patients move around, and helping patients into and out of bed, taking them to the restroom, and caring for

them. (Tr. 45-48.) Plaintiff switched from working full time at Clara Maass to part time in March 2015. (Tr. 49.) The position requires Plaintiff to do heavier work (*e.g.*, lifting and washing patients), without the option of only doing lighter work. (Tr. 51.) Plaintiff worked sixteen hours per week as a nurse's aide at the time she applied for disability. (Tr. 256.)

    **2. Medical History**

The record demonstrates that numerous practitioners examined, consulted, and treated Plaintiff for physical medical issues associated with her disability claim. The following is a summary of the evidence. In April 2012, Plaintiff went to the Emergency Room at Clara Maass seeking treatment for chest pain and high blood pressure. (Tr. 259.) She stayed overnight for one week. (*Id.*) In October of that same year, Plaintiff returned to Clara Maass seeking treatment for the same condition. (*Id.*) Plaintiff was diagnosed with non-severe chronic bronchitis. (Tr. 82.) Dr. Rajendra Desai subsequently prescribed Plaintiff medication to treat blood clots in her lung. (Tr. 287.) That winter, Dr. Alphesh Amin of Garden State Oncology tested Plaintiff for blood clots and lupus. (*Id.*) As of early 2013, Plaintiff took the following prescribed medications: amlodipine besylate (for artery disease), bupropion (for COPD), clonazepam (for panic attacks), and warfarin (for blood clots). (Tr. 288.) In 2014, she was also prescribed simvastatin to treat her high cholesterol. (Tr. 336.) More recently, one of her doctors also prescribed tizanidine to treat muscle spasms. (Tr. 340.)

Plaintiff has a history of pulmonary embolisms, protein C deficiency, hypertension, sleep apnea and obesity. (Tr. 343, 661.) In early 2013, Plaintiff sought medical treatment from Dr. Rajendra Desai due to nausea and vomiting. (*Id.*) An echocardiogram showed a normal left ventricular size and systolic function, but an enlarged left atrium and trace tricuspid regurgitation. (*Id.*) Dr. Desai diagnosed her with gastritis and a hiatal hernia. (*Id.*) Plaintiff alleges that she

suffers from lupus. (Tr. 342.) Although there was mention in the record of Plaintiff potentially having lupus or lupus antibodies, Plaintiff was never diagnosed with lupus. (Tr. 342, 758, 770, 787.) Indeed, Plaintiff tested negative for a lupus anticoagulant in 2015. (Tr. 769-70.)

### 3. Mental Health Treatment

The record demonstrates that Plaintiff sought treatment for mental health conditions. (Tr. 420-24, 453-55.) The following is a summary of the evidence. On November 11, 2012, Plaintiff visited Northwest Essex Community seeking treatment for major depression. (Tr. 258.) She had her first mental health evaluation on December 5, 2012. (*Id.*) In early 2013, Plaintiff sought treatment for depression and anxiety at Northwest Essex Community. (Tr. 288.) Dr. Seymour Bortner concluded that Plaintiff suffered from affective disorders that mildly restricted her daily living activities and social functioning, and made it moderately difficult for Plaintiff to concentrate. (Tr. 82.)

### 4. Function Report

Plaintiff completed a function report on June 24, 2013 and described her daily activities as attending a mental health program a few times a week, preparing food for her children, and shopping for groceries or clothing. (Tr. 63-64, 303-10.) Plaintiff reported that she needs help from her two daughters and her mother in taking care of the home, preparing meals, and getting ready in the morning. (Tr. 303-07.) In addition, she experiences trouble sleeping, focusing, handling stress, and remembering things. (Tr. 303-10.)

### 5. Hearing Testimony

ALJ Olarsch held a hearing on August 12, 2015 during which Plaintiff and Vocational Expert Rocco J. Meola ("VE Meola") testified. (Tr. 35.) Plaintiff testified that she suffers from blood clots, shortness of breath, and has trouble remembering things (e.g., taking her medication).

4

(Tr. 54-61.) At the time of the hearing, Plaintiff took a muscle relaxer as well as medication to treat her high cholesterol, high blood pressure, and blood clots. (Tr. 58.) Although Plaintiff worked only sixteen hours per week at the time she applied for disability, by the time of the hearing Plaintiff worked up to thirty hours per week. (Tr. 47-49, 256.) Because of her fatigue, Plaintiff had to call out of work a few times. (Tr. 50.) When asked if Plaintiff could perform solely light work as a nurse's aide at Clara Maass, Plaintiff replied, "[Clara Maass] told me if I can't do it…that I would have to, you know, find another [job]." (Tr. 51-52.)

Plaintiff testified that the blood clots have cleared in her lungs with the help of medication. (Tr. 54-57.) Additionally, she has weaned herself off of Wellbutrin, the medication that treated her depression. (*Id.*) From November 2012 to the end of 2013, Plaintiff attended a mental health institution daily to treat her depression and anxiety. (Tr. 63-65.) Plaintiff testified that although she previously had two to three panic attacks per week, she now has panic attacks maybe once a week, but not as often as she used to. (Tr. 65-66.) Plaintiff testified that she is particularly prone to panic attacks when taking elevators. (Tr. 70.)

ALJ Olarsch determined that Plaintiff's limitations are unskilled medium work and off-task up to 10% of the workday, with limited social interaction. (Tr. 71-75.) VE Meola testified that a hypothetical individual with Plaintiff's education, training, work experience, and functional limitations could not perform her past work as a nurse's aide. (Tr. 71-72.) VE Meola further testified that a hypothetical individual with Plaintiff's background and limitations could perform the occupations of hand packager, bagger, or ingredient scaler, which exist in substantial numbers in the national economy. (Tr. 72.) However, a hypothetical individual could not miss two days a month because of either a mental or a physical problem, or be off task 20% of the time, and maintain employment in a competitive labor market. (Tr. 75.)

5

## II. LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which

evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976) (internal quotation marks omitted). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

**B. The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination

of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1)

(citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.   DISCUSSION

On August 24, 2015, ALJ Olarsch applied the five-step disability test and determined that Plaintiff was not disabled between the onset date and the date last insured. (Tr. 19-29.) ALJ Olarsch's findings are supported by substantial credible evidence. There is no basis for remand or reversal because Plaintiff's medical history is sparse, and ALJ Olarsch appropriately considered all of Plaintiff's medically supported complaints.

At step one of the five-step test, ALJ Olarsch determined that Plaintiff has engaged in substantial gainful activity since June 2014. (Tr. 22.); *see* 20 C.F.R. § 404.1571 *et seq*. At step two, ALJ Olarsch found that Plaintiff's history of pulmonary emboli, hypertension, and depression are severe impairments because they cause more than minimal limitations and are documented in the record. (Tr. 22.); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Plaintiff also alleges she was diagnosed with lupus, but ALJ Olarsch concluded there was no evidence to support this claim. (Tr. 444; *see also* Tr. 22.) In fact, her blood test was negative for lupus. (Tr. 22.) Plaintiff also claims she suffers from sleep apnea, but there is no objective medical evidence in the record to support that claim. (Tr. 69.) Plaintiff also complained of cramping and tightness in her hand and leg, but a clinical evaluation conducted at the Institute for Rheumatic and Autoimmune Diseases showed that she has full range of motion of all joints. (Tr. 22, 758-759.) ALJ Olarsch's finding

10

that Plaintiff's history of pulmonary emboli, hypertension, and depression are severe is supported by the evidence in the record.

At step three, ALJ Olarsch found that Plaintiff does not have an impairment that meets the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 23.) ALJ Olarsch considered Plaintiff's impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 3.00ff[1] and 4.02[2] and factored her obesity into his decision. (Tr. 23.) Under § 4.02, a plaintiff must provide medical evidence of systolic failure or dystolic failure resulting in either persistent symptoms of heart failure, three or more separate episodes of acute congestive heart failure within a consecutive twelve month period, with evidence of fluid retention and requiring hospitalization or emergency room treatment, or inability to perform on an exercise tolerance test due to dyspnea, fatigue, or other factors. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 4.02. ALJ Olarsch properly found no evidence in the record that Plaintiff's symptoms meet the severity required by Listings 3.00ff and 4.02, or that obesity impacted Plaintiff's other body systems. (Tr. 24.)

ALJ Olarsch found that Plaintiff's mental impairments did not meet Paragraph B criteria of affective disorders under 12.04 and anxiety-related disorders under 12.06. (Tr. 23.); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.0, 12.04, 12.06. Paragraph B criteria requires that the mental impairment result in at least two of the following, with extended duration: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation. (*Id.*) ALJ Olarsch properly considered the restrictions to Plaintiff's activities of

---

[1] For purposes of this Opinion, this Court will refer to Listings and Sections interchangeably. Section 3.00ff lists impairments involving a respiratory or cardiac involvement or an associated medical disorder.
[2] Section 4.02 lists impairments involving chronic heart failure.

11

daily living. (Tr. 23.) For example, the ALJ noted that Plaintiff is mildly restricted in her activities, and that her mother helps Plaintiff when she feels stressed. (Tr. 292-310.) Additionally, he noted that Plaintiff reported having difficulty leaving her home. (Tr. 270-75.) However, the record also demonstrates that Plaintiff interacts with her mother, attends a program multiple times per week, independently cares for her two daughters, cooks, cleans, cares for her personal needs, and takes public transportation. (Tr. 270-85).

Regarding social functioning, ALJ Olarsch determined that Plaintiff has mild difficulty with social interaction. (Tr. 23.) Plaintiff reported that she has no problem getting along with others, but does not socialize often. (Tr. 270-77.) There is no medical evidence showing psychosis or abnormal social behavior. (Tr. 357-62, 420-24, 436-48, 453-55.) ALJ Olarsch concluded that Plaintiff has moderate difficulty with concentration, persistence, or pace. (Tr. 23.) Plaintiff reported limitations in memory, completing tasks, and concentration, but is capable of simple mathematical calculations. (Tr. 270-77, 453-55.) ALJ Olarsch found that Plaintiff had no episodes of decompensation, which have been of extended duration. (Tr. 23.) Because Plaintiff's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, ALJ Olarsch ruled that Plaintiff failed to meet her burden. (Tr. 24.) There is substantial evidence supporting ALJ Olarsch's determination that Plaintiff's mental impairments do not cause the requisite marked limitations.

ALJ Olarsch properly determined that Plaintiff's mental impairments did not meet Paragraph C criteria. (Tr. 24.); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00. Paragraph C criteria for affective disorders under listing 12.04 includes a medically documented history, for at least two years, of a chronic affective disorder that causes more than a minimal

limitation of the ability to do basic work activities as well as symptoms currently attenuated by medication or psychosocial support. (*Id.*) In addition, the evidence must demonstrate repeated episodes of decompensation, residual disease process that results in such marginal adjustment that even a minimal increase in mental demands or change of environment would cause decompensation, or the inability to function outside of a highly supportive living arrangement for at least one year. (*Id.*) ALJ Olarsch properly determined that Plaintiff's affective disorders did not meet Paragraph C criteria. (Tr. 23-24.) Paragraph C criteria for anxiety-related disorders under listing 12.06 requires a complete inability to function independently outside the area of one's home. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06(c). Substantial evidence in the record supports ALJ Olarsch's determination.

ALJ Olarsch followed the appropriate two-step process for his RFC determination. (Tr. 24.) He first determined whether there were medically determinable impairments and then evaluated the intensity, persistence, or functionally limiting effects of the symptoms. (*Id.*) In addition, where Plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain and other symptoms were not substantiated by objective medical evidence, the credibility of the statements, based on the entire record of medical evidence, was properly evaluated. (*Id.*)

ALJ Olarsch carefully considered the evidence and found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but did not find that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were entirely credible. (Tr. 25, 254-61.) Plaintiff alleged disability due to major depression, blood clots in her lungs, pulmonary emboli, high blood pressure, and pain in her legs. (Tr. 24.) Plaintiff specifically alleged that her depression caused difficulty with memory,

13

completing tasks, and concentrating. (Tr. 24; 270-77.) However, Plaintiff's blood clots have resolved, she underwent treatment for depression, and she testified that she no longer suffers from frequent panic attacks. (Tr. 55, 64-65.) Plaintiff takes blood thinners and no longer takes Wellbutrin. (Tr. 54-59.) She takes care of her daughters and is independent in most daily life activities. (Tr. 270-77.) Dr. Amin, a treating hematologist, reported no limitations in Plaintiff's ability and that her exam results were normal. (Tr. 449-52.) Dr. Shah, a pulmonologist, also reported that Plaintiff is doing well; and she found no evidence of respiratory problems or pulmonary emboli. (Tr. 654-66.) Dr. Desai, a cardiologist, reported Plaintiff's high blood pressure is stable with medication and found no abnormalities. (Tr. 425-28, 708-53.) Furthermore, despite her conditions, Plaintiff works as a nurse's aide for thirty hours per week. (Tr. 40-42.) After considering Dr. Desai and Dr. Amin's reports, ALJ Olarsch concluded that it is reasonable for Plaintiff to carry and lift up to twenty-five pounds, frequently, and fifty pounds, occasionally. (Tr. 26.) This finding is supported by objective medical evidence in the record.

ALJ Olarsch accorded great weight to Dr. Figurelli's psychological examination, and little weight to Dr. Linehan's examination. (*Id.*) Dr. Figurelli found that Plaintiff showed normal behavior and no evidence of psychosis, despite complaints of feeling overwhelmed, having difficulty focusing, and isolating herself. (Tr. 25, 420-24.) Dr. Linehan also found that Plaintiff showed no signs of psychosis, but stated that she may have a learning disability. (Tr. 25, 453-55.) ALJ Olarsch found no objective evidence in the record to support the latter conclusion. (Tr. 25). The ALJ's finding is supported by substantial evidence because the administrative record shows that Plaintiff completed a high school equivalency course, and obtained a GED and a nurse's assistant certification. (Tr. 38, 43.) Plaintiff is also the primary caregiver for her two children and is able to independently care for them and maintain the household. (Tr. 270-77.) She is also able

14

to travel by public transportation on her own. (*Id.*) After considering the mental evaluations and the record, ALJ Olarsch properly concluded that Plaintiff's mild depression limited her to simple tasks, but that she is capable of responding appropriately to others and can perform unskilled work. (Tr. 26.) Based on the foregoing, there is substantial evidence in the record to support ALJ Olarsch's conclusion that Plaintiff's impairments allow her to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), limited to unskilled work and off-task 10% of the work day. (Tr. 24.)

At step four, after making the RFC determination, ALJ Olarsch properly determined that Plaintiff was unable to perform any of her past relevant work because her RFC limited her to unskilled work, and Plaintiff's previous occupation as a nurse's aide was categorized as semiskilled. (Tr. 24-28.) VE Meola's testimony on August 12, 2015, supports ALJ Olarsch's finding at step four. (Tr. 35, 71-76.)

At step five, ALJ Olarsch found that Plaintiff can perform work that exists in substantial numbers in the national economy, considering her age, education, work experience, and RFC. (Tr. 71-74.) VE Meola testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the requirements of a hand packager, bagger, and ingredient scaler—each of which has an excess of at least 50,000 jobs in the national economy. (Tr. 28, 71-75.) ALJ Olarsch credited VE Meola's testimony as consistent with the information contained in the Dictionary of Occupational Titles. (Tr. 28.) After correctly following the five-step test, ALJ Olarsch found that Plaintiff was not disabled under the Act. There is substantial medical evidence in the record to support his decision.

## IV. CONCLUSION

Because this Court finds that ALJ Olarsch's factual findings were supported by substantial credible evidence in the record and that ALJ Olarsch's legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

                                                  s/ *Susan D. Wigenton*
                                                  **SUSAN D. WIGENTON**
                                                  **UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc:    Parties